IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cr. No. 05-303 (RBW) |
| | ) | |
| WILLIAM K. SHANKLIN III, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant, William K. Shanklin, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the District of Columbia Voluntary Guidelines, Mr. Shanklin respectfully asks the Court to sentence him to a period of incarceration of time served, followed by probation.

**BACKGROUND**

On August 10, 2005, Mr. Shanklin was charged, in a six-count superceding indictment, with Bank Fraud and Causing an Act to be Done, in violation of 18 U.S.C. §§ 1344 and 2 (Counts One and Two) and First Degree Theft, in violation of 22 DCC §§ 3811 and 3812 (Counts Three through Six). The criminal conduct alleged in the charging document occurred between July, 1999 and January, 2001.

On January 13, 2006, Mr. Shanklin pled guilty to Count Three of the superceding

indictment in accordance with a written plea agreement.

Mr. Shanklin was arrested in connection with the instant offense on November 4, 2005 and released on November 18. On November 30, 2006, Mr. Shanklin was placed in the High Intensity Supervision Program, where he complied fully with each and every condition until he was released to his own personal recognizance on March 7, 2006.

## DISCUSSION

### I. THE POST-BOOKER SENTENCING FRAMEWORK.

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, _ U.S. __, 2005 WL 50108,*27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the

>   defendant; and
>
>   (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

>   No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

>   [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing

factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

## II. UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. SHANKLIN SHOULD RECEIVE A SENTENCE OF INCARCERATION OF TIME SERVED.

### A. Statutory Provisions

Pursuant to the applicable statute, the maximum term of imprisonment is ten years. 22 DCC §§ 3811 and 3812(a).

### B. District of Columbia Voluntary Guidelines

#### (I). *Applicable Guideline Range*

The Probation Office has determined that the voluntary Guideline range for a Master Grid Group 8 offense and a Criminal History Score of "A" is 6-24 months. As noted by both the Probation Office in the Presentence Investigation Report ("PSR") and the government in its sentencing memorandum, the imprisonment range cited does not suggest that a sentence of imprisonment is recommended by the Superior Court guidelines.

### C. Other Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate

deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

---

*I. Nature of the Offense*

The crime to which Mr. Shanklin pled guilty is a serious offense. Despite the fiduciary duty he owed his customers as a securities broker, Mr. Shanklin commingled his clients' funds with his own and thereby converted parts of those funds to his personal use. Having commenced his employment with American Express in 1998, by mid-1999 Mr. Shanklin had visions of establishing his own brokerage company. While he had hopes, Mr. Shanklin did not have the requisite training; having solicited investments from relatives and friends, he proceeded down a mistaken, negligent and, ultimately, criminal path.

While Mr. Shanklin recognizes the harm his conduct caused and in no way wishes to diminish the seriousness of his actions, he does ask the Court to take into account the fact that he has not been charged with either a drug crime or a violent offense. Furthermore, it should be noted that Mr. Shanklin has no criminal history whatsoever and that almost five years transpired

between the underlying conduct and the filing of an indictment in the instant case.

*II. Characteristics of the Defendant*

As set forth in the PSR, Mr. Shanklin has been a hard-working individual his entire adult life. While Mr. Shanklin did not formally receive his college degree due to a financial obligation, he studied at the University of Miami for four years and completed the 120 hours necessary for graduation. Following his college education, Mr. Shanklin joined the United States Air Force, where he served for ten years. Mr. Shanklin has been employed consistently since his honorable discharge from the military. Currently, Mr. Shanklin owns and manages Shanklin Management, a company which assists custodial companies develop business and marketing plans. Not only is Mr. Shanklin working long hours to obtain new contracts and make ends meet; he is continuing his education and just successfully completed a course on "Principles and Practices of Real Estate" at Prince George's Community College. While the last year has been financially difficult for Mr. Shanklin–his monthly earnings are approximately $1,200–he hopes his most recent training will enable him to become a licensed real estate appraiser. Mr. Shanklin is deeply aware that a stable and significant income will be crucial to his ability to pay the restitution he owes, as well as child support.

Mr. Shanklin's education and employment history tells an important, but incomplete, story. The fact that Mr. Shanklin has no criminal history speaks volumes with respect to his character. Throughout his life, Mr. Shanklin has tried to do the right thing–serving his country in the armed forces, obtaining his higher education, participating in his children's lives, and maintaining consistent employment. Even in the instant case, while he made a very significant

mistake, Mr. Shanklin admitted having done so, waived his right to file any pre-trial motions, accepted responsibility, and pled guilty in a timely fashion.

Mr. Shanklin is not someone in need of rehabilitation. Everything he has done to further his prospects, employment and education, Mr. Shanklin has done of his own volition and initiative. A further sentence of incarceration would serve only to disrupt the rehabilitative efforts Mr. Shanklin has made and set him back with respect to the real debt he owes society–restitution. Nor is Mr. Shanklin someone who requires incarceration for purposes of deterrence. Mr. Shanklin was indicted almost five years after the commission of the instant offense. The fact that he had no encounters with the criminal justice system between 2001 and the time of his arraignment provides proof that imprisonment is not what prevents Mr. Shanklin from engaging in criminal conduct.

Since the commencement of his criminal case, Mr. Shanklin has done everything within his power to both maintain employment and comply perfectly with his release conditions. The requests made for modifications in his release conditions have stemmed from a desire to work more or longer hours. Mr. Shanklin has never failed to maintain contact with Pretrial Services or tested positive for any illicit substance. That he has shown due respect for the conditions the Court imposed reflects how very seriously Mr. Shanklin has taken the instant case.

### III. Needs of the Community and Public

For the reasons stated in Section II, neither the community nor the public at large would benefit were the Court to sentence Mr. Shanklin to a further period of imprisonment. In many ways, Mr. Shanklin is just the type of individual who should, and could, serve as a role model for

the members of his community. He has completed his education, he has stayed away from drug and alcohol abuse and, with the exception of the instant case, has had no (juvenile or adult) criminal convictions. What Mr. Shanklin can do, at this stage, to better the public is pay back the significant amount he owes in restitution. Incarcerating him, even for a brief period, would disrupt the progress he has made not only to better himself academically, but to obtain gainful and stable employment.

*IV. Sentencing Mr. Shanklin to a Sentence of Incarceration would be Unduly Punitive*

Prior to last November, Mr. Shanklin had never spent a night incarcerated. His brief experience at the D.C. Jail was, understandably, a terrifying wake-up call.
Clearly, imposition of an additional sentence of imprisonment in the instant case would serve no purpose other than punishment. As noted above, more than four years transpired between Mr. Shanklin's conduct and the time when an indictment was even filed. It was not incarceration, in Mr. Shanklin's case, that acted as a deterrent. In light of the limited amount of time that Mr. Shanklin has spent in custody, imposing a sentence of imprisonment on him would prove more detrimental to his character than rehabilitative or instructive. Punishment is indeed one of the purposes of sentencing, but the weeks at D.C. Jail, the toll the instant case has taken on his spirits, and the fact that, in any case, conditions will be imposed and his liberty restricted certainly serve–in Mr. Shanklin's case–as adequate punishment.

*V. The Court has Evidence that Mr. Shanklin would be a Perfect Candidate for Supervision*

Should the Court sentence Mr. Shanklin to time served and a period of probation, it could rest assured that he would comply fully with the requisite conditions. Not only did Mr. Shanklin return to a law-abiding life before he was indicted; he has complied with all of his pre-trial conditions since he first appeared in this Court. Rarely does a court have this much evidence concerning the likelihood of success of a particular defendant.

## CONCLUSION

For the reasons set forth above, as well as for any others that it may deem fair and reasonable, Mr. Shanklin asks the Court to sentence him to a period of incarceration of time served to be followed by a period of probation. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

A sentence of further imprisonment in this case would serve neither a deterrent nor a rehabilitative function. To the contrary, a sentence of imprisonment would disrupt the extraordinary progress that Mr. Shanklin has made and, in so doing, punish not only him but his community.

                                          Respectfully submitted,

                                          A.J. Kramer
                                          Federal Public Defender


                                          _____/s/_____
                                          Lara G. Quint
                                          Assistant Federal Public Defender
                                          625 Indiana Avenue, N.W.

Washington, D.C.  20004
(202) 208-7500 ex.134